Hearing, hearing, hearing. The United States Court of Appeals for the 11th Circuit is now open. The court is about to contact the United States Department of Justice. Good afternoon. Please be seated. We're here for argument in case number 25-12304, Jason Michael Sharp v. Warden of the Holman Correctional Facility. Hopefully, you're familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close. So, begin to wrap up. If we take you beyond the red light, then just keep on going. And with that, we're ready to start. Mr. Hahn. May it please the court. Spencer Hahn for Petitioner Jason Michael Sharp. The prosecutor in this case struck 11 of 14 black jurors for using his parameters. The most common reason he gave given for 8 of 11 was, quote, lack of sophistication. That reason itself is suspect and is akin to low intelligence. In and of itself or in this case? I think both, Your Honor. If you look at lack of intelligence as essentially a corollary to that, it would be lack of intelligence, lack of sophistication. It's sort of a sleight of hand here. And so our position would be both. In this case, for example, we had juror 43, a white female housewife who had no demonstrated work history, which the state noted that she may also have been seen as unsophisticated. However, her husband had once been an expert witness due to his employment at Dunlop Tire in Miami in the 1980s and had two, quote, educated children. And we refer to that in our briefing as sophistication by osmosis. But the problem with that, relying on that, is that there were at least five of the eight black jurors who were struck for being, quote, unquote, unsophisticated, were manifestly more sophisticated by the state's definition than juror 43. Your Honor, for at least, and this may not be the case with juror, you said 43, right? Yes, Your Honor. It may not be the case with 43. I can't keep them all together with the numbers. But for at least some of the jurors whose strikes you challenge as being racially motivated, there were multiple reasons given. And like I said, I don't recall whether 43 is in that category or not, but there were at least a couple that I can recall that the state gave a number of reasons, some reasons which might raise some eyebrows and might be found to be racially problematic, and some reasons which, if accepted as true, at bats in step three, would pass muster. Right? So in 43, was that the only reason given or were there other reasons given? And Your Honor, we're using 43 as a comparator. She was a white female. She was not struck. She was allowed to serve on the jury. Oh, I'm sorry. No, no problem. We're using her as a comparator for the sophistication, and that's because the state actually anticipated the issue. And when they got to the Batson hearing, they actually said, you know, and it was the state's intent, as I said earlier, that with the level of technical jury that this or technical evidence, one of the main concerns of the state in this case was to get to, in fact, get a jury that could comprehend DNA evidence. And then immediately thereafter said, I will note for the court that when you do look at the jurors who remained on this case, the court will find that they were all professionals or of management level with the exception of the one lady who was a housewife. They're referring to Juror 43 here. But married to a guy who worked at Dunlop Tire who'd appeared in court as an expert witness, and I'll represent to the court according to her juror questionnaire, that was in the 1980s in Miami, Florida in federal court. And this lady also had two children who were both educated. Now the problem, and so we're using 43 as a comparator on sophistication. And because of the suspect nature of the lack of sophistication that we submit is similar to low intelligence, and which the Alabama Court of Criminal Appeals appeared to treat that way, they noted that the stated reasons were all facially race neutral. And in their string site of cases saying that these are all facially race neutral noted that lack of mental acuity is race neutral. Now it appears that what the CCA did, the last reason state court decision, was treat lack of sophistication as lack of mental acuity, which we think is indistinguishable from low intelligence. I don't believe that anybody could hold it as something else in light of that. All right, let me turn you to some of the jurors which you use as examples of Batson violations. Right, so for example, juror number 27, there were a number of reasons provided, but one of those reasons seems to me to be, if accepted, at Batson step three to be perfectly okay. And so for juror number 27, one of the reasons given was, in question number 79 in the questionnaire at the very end, when the question asks, if you've heard anything in the media regarding this case, do you feel that you could still be fair and impartial? And she circled no, and the state says that caused us concern. So what are we to do with those reasons which, if accepted, at Batson step three, would not be racially problematic? I'll note a couple of things, Your Honor. Nearly all of the jurors, as the parties acknowledged to the court and to the CCA, had problems answering these questions. And I think the papers do a pretty good job of pointing out that this was a hypothetical question. The way that this was viewed and the way the district court looked at it was this was a hypothetical question. If you'd heard something about the case, could you be fair? She circled no. If you look at the question immediately before that question, she says she hasn't heard anything about the case. But let's put that aside, but I will note… All right. Let me give you another one then. I take that point. So the second – I shouldn't say second. One of the other reasons given for that same juror, juror number 27, was that she had been charged with possession of marijuana and convicted with at least one count of second-degree possession back in 1990. So… I got you. Yes, Your Honor. I've got my chart here, and I'll let you know that just getting quickly back to question 79, I wanted to note that neither the trial court nor the CCA relied on that reason or mentioned it. And so that's another reason why I don't think it plays into the calculus, but it can be distinguished. I'll note as far as this, what the trial court found was that a strike based on information, quote, We don't dispute that. It is obviously facially race neutral. In this case, the district attorney also noted that he likely served as the prosecutor on the case, but this juror never indicated that she recognized him. These reasons support her removal. Now, that was a shift in the reason. What the prosecutor actually said was of equal concern was the fact that she'd been charged with what appears to be six counts of possession of marijuana second-degree. It appeared she'd been convicted on at least one of those accounts. These cases arose back in 1990. I was exclusively a drug prosecutor from 88 to 94, so I would have been in the office. She appeared to have lived here in Madison County. These charges came out of Madison County. That is far from saying she was convicted, and I'll note that what ended up happening next was that the Court of Criminal Appeals found it to be a valid race neutral reason, rejected a comparator to a juror with a criminal conviction, juror 24, a white juror who served, and rejected it because they were not similarly situated because he, quote, Now, the problem with that is it presupposes the juror 27's juror questionnaire is filled with lies. And what the dissent in CCA said was, look, these juror questionnaires are sworn, and what we've got here is a prosecutor saying, without any evidence, it appears she may have been charged with six counts. She lived in the county. She's got the same name. I was exclusively a drug prosecutor. And then what you have the courts do is they gradually shift the reason. And if you look at Miller L2, they talk about how the prosecutor has to stand and fall on the reasons he or she gives, and it's not up to an appellate court or the reviewing court to invent reasons or substitute reasons for why they may have struck a juror. This amounts to that by switching this from she had a prior conviction, which would render her comparable to juror number 24, who had an assault conviction, and it would take her personal possession of marijuana, which is what possession of marijuana second in Alabama is. It is a misdemeanor offense, and move it to being a dishonesty angle. But there's simply no evidence that she was dishonest, and there's no evidence that she lied about not having a conviction. Okay. So you have two individuals who have criminal convictions. The first part, from what I understand, is saying, well, I don't want this person because of a criminal conviction, but this white juror is okay, and then you have a switch. Now let's say they started and rested only on that switch, the dishonesty. Would that be valid then? I mean to say we're okay as a state with someone with a criminal conviction being on the jury. We just want a person who's honest about their criminal history. I think that given that hypothetical, Your Honor, that could be appropriate. The problem is we have to look at all relevant circumstances, and when we're looking at all relevant circumstances, what we have here is the state saying their reasons, and none of their reasons involves dishonesty. And then the courts, as they move it along, gradually shift that into a dishonesty in order to do away with the comparator. But what we have here is nobody asked her about it, and that is another relevant factor that needs to come into play, that the Court of Criminal Appeals failed to account for and said, well, we didn't want to ask jurors about things like this because it could embarrass them. Well, we had in chambers juror questioning, and again, this prosecutor had gotten in trouble, albeit a decade before, for failing to ask questions of jurors and was found to violate Batson. Now here we have him coming up with reasons on the fly or from his notes that don't match with the reason that the CCA used in reaching its conclusion. I also have a question about the balancing of the reasons. So for example, we're here on Batson, which means even if we find that one black juror was struck for an improper reason, it's a structural error to start over. But how does that work when it comes to the reasons given? Is it not true that you can have multiple reasons given, some of them suspect if not implausible, but as long as you have some race-neutral reasons in the mix, then that's okay? How do we balance the reasons given, even with your argument just now that you've got a shifting of motives? Well, I would submit to the court that when Batson and his progeny talk about all relevant circumstances, they are talking about just that. You need to assess what did the prosecutor say, just as you would do in assessing whether to believe a witness or not in a court. And you hear a jury instruction. I think the pattern instruction in the 11th would be something along the lines of, you know, if you find a witness to be false in part of his or her testimony, you're free to disregard the rest of that testimony. I think the similar principle could apply here and would apply with regard to assessing it. If a prosecutor has to give five reasons for striking a black juror, and you disprove or show that they're pretextual or false as to four of them, that has to somehow inform your all relevant circumstances. Otherwise, why would the prosecutor have said that? And if the prosecutor was, you have to be able to find a primary purpose was not, or that the primary purpose was one of those reasons given, not a race-based reason. And so it does introduce an odd scenario here where what we have with the CCA is they've affirmatively decided that so long, and I think the exact language they used to intro here is, Sharp has not demonstrated as to any individual juror in question that all the stated reasons for striking that juror were a sham or pretext. Thus, Sharp has not demonstrated that the prosecution violated Batson. Under that reading, we've got nothing better than Swain at this point. And that's essentially what the Supreme Court said. I believe it was in Snyder. They noted that, I'm sorry, Miller L2. They noted at 240, if any facially race-neutral reason sufficed to answer a Batson challenge, then Batson would not amount to much more than Swain. What we have here is we have a court that has blinded itself. They've essentially severed each and every reason that was proven to be false or pretextual and said we're not going to consider those because so long as we have a single race-neutral reason that has not been disproven, none of the rest of it matters. And the problem with doing that is you have juror number 27 as a perfect example, and Judge Jordan brought up the reasons. Well, 79 wasn't addressed by either court, probably because most of the jurors had trouble with an 80-question questionnaire that had a bunch of hypotheticals, and I believe the part he's noted at Vordeer was fairly complicated and poorly written. And then you've got, but what do we have here compared to, let's say, Davis v. Ayala, where in Davis they've got a situation where the prosecutor said my primary reason for striking this juror is because this juror is opposed to the death penalty. And I have a secondary reason that had to do with answering the questions, not fully. And what the Supreme Court there said was we know, the California Supreme Court said, that we find the primary reason he would have struck this juror regardless of the second factor. But what we have here is we have the prosecutor on juror 27 saying, quote, first and foremost that occurred to us was her employment being a packer on an assembly line at Target Distribution Center. Her previous employment was at Burger King. Did not match its, quote, quest for jurors that possessed a little more sophistication. Their first and foremost reason. If the trial court doesn't take them at their word for what their primary reason was, and you've disproven that reason, you've disproven the question 79, and you've shown that a comparator, juror 24, had an assault conviction. And the prosecutor didn't give dishonesty as a reason. So what we've got is the CCA affirming a denial of Batson relief, where the prosecutor gave a primary reason that was racially suspect and false. And as far as question 79 being incorrectly answered or inappropriately answered. Well, which one do you say was false? The lack of sophistication, Your Honor. I don't think that working at Burger King renders one unsophisticated. I worked at Burger King in high school, and I'm telling you it is a hard job, and it requires a lot of mental acuity. You have to balance orders. You have to time the fry cooker. I mean, there's a lot of things that have to do with this anti-blue-collar approach that the state took here in order to create this idea of personal and social sophistication is offensive. Let's – here's – okay, let me – two questions. One legal, one factual. So legally, as I understand the brief and the argument you made below as well, is that you think that the Alabama courts unreasonably applied Batson because they didn't use the substantial motivating factor test from cases like Snyder, which had been on the books before the ACCA rendered its second decision on remand from the Alabama Supreme Court, right? That's the unreasonable application part, right? That is argument number one, yes, Your Honor. Okay, so let's assume for purposes of discussion that you're right about that. That gets you to de novo review, right? Traditional, run-of-the-mill, pre-AEDPA appellate review. At the end of its order, the trial court says – it's conclusory, but it says this at the end of its order. Let's see if I can find it. It's on page 358 of the ACCA opinion. It says, the court finds that as set forth in this order, the state has demonstrated valid race-neutral reasons for the use of its peremptory challenges with regard to the jury veneer in this case. If that's all the court had said, I think you'd be on very good footing. But here's the next sentence I'd like you to address. Those reasons, which the court finds to be valid, were not a function of pretext or sham. So, although the finding is conclusory, the Supreme Court has said that Batson determinations don't need to be elaborate. Why is that not sufficient to preclude you from relief under a traditional, clear-error standard, putting AEDPA completely off to the side? Well, assuming the trial court decision were the last reason state court decision, I don't want to give that up, that the CCA was the last reason state court decision. No, I think you're right that it was, but I'm starting from the bottom up. Absolutely, yes, Your Honor. The reason is, the reasons the court found to be valid were non-pretextual. I will tell you, for juror number 27, one of the reasons that that court found to be valid was, first and foremost, what occurred to us was her employment. The lack of sophistication found, the trial court found, finds this to be a race-neutral reason. This was one of the few jurors where the trial court actually upheld the lack of sophistication as a basis. Now, the Court of Criminal Appeals, when it got to it, did not address it because Mr. Sharp had failed to disprove all the reasons. And so what we have then is, that is a clearly erroneous factual finding. The idea that this person is unsophisticated because they worked at a target distribution center and a Burger King, and somehow that puts them different from juror 43, who had no employment outside the home, was a housewife, had a husband who was, quote, sophisticated because he testified, sort of a Kumo Tire situation. He was a tire installer who testified as an expert under 702 in federal court in the 1980s and had managed to send two children to college. While that's an accomplishment, I don't know how that makes a person sophisticated any more than juror number 27, who worked mostly blue-collar jobs, but was able to answer juror questions and interact with the parties and appear to be all there. So I would say that the premise upon which it rested was faulty. And so the court found them to be facially race-neutral and found them to be not the work of pretext. But the Court of Criminal Appeals appeared to have a different take on that because they refused to even consider the lack of sophistication. But not on all of them. No, but on 27, Your Honor, and we have one juror. We have to establish that one juror was struck based on race, and there's a new trial. The two main ones, I mean, I don't want to put words in your mouth, but the two that you focused the most on seem to be 27 and 11. Yes, Your Honor. Is that right? Yes, Your Honor. Those were the two that the original 3-0 Court of Criminal Appeals decision found that they had no option but to conclude were struck for racial reasons. We would note, however, juror 52 is another strong comparator. But the reality is when you are looking at this, we have to, if this were to be sent back for de novo review, it would go to the district court, and the district court would have to look at the record and the evidence. And what I will note here, though, is that trial counsel in this case was not given an opportunity to adequately rebut some of this stuff. Trial counsel asked for the state's notes. So the state shows up, and this hearing happened several years after the fact, and the state shows up and says, well, according to my notes, X, Y, Z. And defense counsel said, Judge, we'd like to see the notes. And if you look, I mean, Georgia has done this. We've seen this in federal review in Georgia where they've turned over the prosecutor's notes after in-chambers review. There was a truncated discovery here, and it resulted in a decision that was an unreasonable determination of the facts that resulted in an unreasonable determination of the facts and resulted in a lack of due process at that point. All right. Let's make more assumptions. So let's assume that you're right about de novo review. Let's assume that you're right about clear error. What's the remedy in the equitable writ? This happened decades ago. So what is the remedy if habeas relief were to be granted to you? What do you get? What do you want to get? And how does it work? Well, ideally, Your Honor, we would ask this court to find that neither D-1 nor D-2 was satisfied and give no deference and it's self-review. Alternatively, we would ask to go back to the district court. We believe that the correct remedy here in order to ensure that the 14th Amendment is honored and, again, this is not Mr. Sharpe's right. This is the right of any one of these jurors who was struck based on race to serve, and it's an imperfect way to achieve some sort of anti-discriminatory purpose in jury selection, but it is the way we have right now. It's much like the exclusionary rule. It may result in what appears on the outside to be slightly unjust, but the reality is if prosecutors are not held to account, and defense counsel for that matter, if somebody raises a Batson challenge and a Batson challenge gets brought and it appears that a juror was struck based on race, you shouldn't give them a windfall of being allowed to continue simply because the habeas process took so long and because the process in Alabama took so long. The Alabama courts chose to develop a Batson process that involved plain-error review at the Alabama Supreme Court for Step 1 of Batson. They chose to do that, and we saw the concurring judge in the second remand had a lot of problems with that approach and said, this is ridiculous. It results in us having dredged-up memories from four or five years ago, and it results in courts not remembering things about the case. But the reality is there was a constitution. If we prevailed, there was a constitutional violation here, and it was a constitutional violation. Well, potentially, because I say potentially because under your view of Batson, if this had played out the way that you think it should have played out, either the trial court or the Alabama Court of Criminal Appeals would have then asked the next question, which is some legitimate reasons, some illegitimate reasons. Would you have struck for the legitimate reasons notwithstanding the others? And that's an exercise that seems, again, assuming you prevail on everything, that seems like an exercise that's very difficult to conduct today, decades later, whether it's an Alabama trial court doing it or a federal district court doing it. And so that's my question for you about remedy, assuming you prevail on everything else. Like you want us to grant a writ which entitles your client to a new trial, or do you want an evidentiary hearing of some kind in the district court? Yes, Your Honor. I think in an ideal world, I would want to win here. If we were going to win, let's win here and move this along and get the case going. But an alternative basis that we requested was that this court remand for de novo review and an evidentiary hearing with discovery. And part of that discovery includes the prosecutor's notes and what, if any, information they had and depositions and or questioning of the prosecutor either under oath or in front of the court as an officer of the court to explain, Mr. Prosecutor, would you have struck this juror? You gave four reasons. You said, first and foremost, lack of sophistication for Juror 27. Was that really first and foremost, or was it not? I mean, at some point, the court's going to have to look at that and decide, did the prosecutor mean what he said when he said it? And if he did, is that sufficient to find a Batson violation? So I think probably the cleanest remedy, given some of the issues that you pointed out, Your Honor, would be for this court to find D1 and D2 were of no deference, either or, and remand for the district court to conduct de novo review with appropriate discovery and an evidentiary hearing and apply the standard properly. Okay. One practical question, and I'll confirm with your colleague on the other side. Are the original lawyers at the trial still around so that they can participate in any sort of hearing on remand? It's not in the record, Your Honor, but a colleague of mine came into my office and said, you know, Rob Broussard, who did the striking for the state and gave all the reasons, is still the district attorney in the county. So we know the person who gave every single reason and was the only person who spoke on the record at the Batson remand hearing is still around. How about the defense counsel? I confess that I don't know, Your Honor. Okay. All right. Thank you. Thank you, Your Honor. And I'll reserve whatever time. I think I have six minutes left. Thank you. You have seven minutes. You've got it all. Oh, thank you. Mr. Thompson, before you start, something I should have said before Mr. Hahn began. The Supreme Court decided a Batson case last week under AEDPA and ruled five to four that the Louisiana courts had unreasonably applied Batson and its progeny. So we would like the parties to file supplemental briefs regarding the effect, if any, of that case on this case. The case is called Pitchford, P-I-T-C-H-F-O-R-D v. Cain. The only citation is a Westlaw citation, 2026 Westlaw 148-5608, decided on May 28th of 2026. So, Mr. Hahn, we'll start with you. How long do you want? Would 14 days be too much? Nope. Okay. Thank you, Your Honor. Mr. Thompson, how long do you want? 14 days. Okay. Simultaneous briefs then. Simultaneous, you can do it two weeks from this Friday. Okay, Your Honor. A little more than two weeks. Today is the third, so the 19th. Close of business. Okay. Mr. Thompson. May it please the Court. This is a classic AEDPA case. This is a case with no underlying racial component. I think racial undertones is the language that this Court has used. There was no racial statement injected into this case by the prosecutor. Well, I mean, the procedural history already shows that reasonable legal minds differed as to that. Can you speak to the sophistication issue? I mean, my recollection of the record is that the DA was very clear that you didn't need to be a scientist, a biologist, or otherwise skilled in terms of DNA evidence, told the whole pool that, and then turned around and struck several jurors as being unsophisticated or not sophisticated enough to digest the scientific evidence. So can you please explain that? Your Honor, I think respectfully that the language the prosecutor used at that point in Vordaer does not support the extent of that interpretation. That is, that that part of the Vordaer where he's sort of explaining that this is a case that will involve DNA evidence on our reading, and I think the reasonable reading that you can infer from the ACCA's decision is that that was a prosecutor trying to develop rapport with a jury, a prosecutor who was not prepared to stand up there and say, if you person who I need on my side to reach the result that I want, not only as to guilt or innocence, but also as to an eventual capital sentence, you were too stupid to understand that. And if you feel that way, I need you to raise your hand now. And so I think that the, the cautiousness with which that was phrased is not an indication that the prosecutor did not think that DNA evidence was complex or sophisticated, but that it was an initial inquiry into whether there was a juror who was turned off by the DNA nature of the case. And I'm not, and I don't think that that it could be interpreted that the prosecutor was saying that DNA evidence is not complicated. Obviously it is, but to tell a whole pool that you don't need to have a certain level of intelligence in order to digest this information. And then to understand that it's the prosecutor's responsibility to articulate the information in a way that the common person, which the jury represents can understand, and then strike people for not being sophisticated enough. That's what I'm trying to understand. What was the level of intelligence then that the prosecutor was expecting of the pool to justify why one person was struck and another person who was unemployed was allowed to remain? I can't speak to, and I don't think the record speaks to the prosecutor's belief about some minimum level of intelligence that would have been required, but there is direct evidence from the Batson hearing about what the prosecutor's preference was at the Batson hearing. I believe after discussion of juror 27, the prosecutor told the court that 11 of 12 jurors in this case were of management level or higher. That is that on all of those jurors questionnaire forms, and this is not what the prosecutor said, but that they were, I think it's indicated in the record that those jurors were managing. It goes back to the last point the judge made, which is and your opposing counsel made, which is the comparative they pointed out who had, I think the past 10 years at that time, zero employment history. So how do you differentiate that? I think based on, you know, a huge part of this case is whether the ACA considered all relevant circumstances. And our submission is that it did. And I think that there's, I think some tension in Mr. Sharpe's arguments and then the comparator arguments that they present in their brief, which is you zoom out to a 30,000 foot level of generality, picking one superficial point of comparison and then saying that that is evidence of pretext without considering the other differences between the  But you have no way of explaining in rational terms, the difference that Judge Kidd just asked you about? No, I think that individual points of comparison or similarity between jurors cannot be viewed in isolation. But the way you try to do this in hindsight, on a cold record is to evaluate points of comparison, as you said, using the totality of the circumstances. And so this is only for me, only a little point, not among everything that doesn't determine everything, but it's a point of comparison. So how do you justify that small point of comparison? A person who works at a fast food place and a person who doesn't work at all and hasn't worked at all for a while. And you say the one you, you want to strike the one who works at a Burger King because of lack of sophistication, but you say nothing about the one who has no workplace experience in the last decade or so. Is there any way to explain that point of comparison?  And that's, I think as both the trial court and the ACA noted that for no single, there was no juror. I think judge Jordan, you asked if there were jurors for which there were multiple reasons given. I know, but I'm not asking about multiple reasons. I'm asking about that point of comparison. Is there any way to justify on this cold record that distinguishing factor between those two jurors? If there isn't, then we move on to the others, the other reasons, the totality of the circumstances, and you may prevail, but I want to know if there's any way to justify keeping the juror with no employee on and striking the juror who works at a Burger King. On that narrow point of comparison, there's nothing in the record that indicates why the prosecutor may or may not have thought that juror number 43 was sophisticated enough to meet some minimum floor or to satisfy his preference. So it is as the ACA and the trial court noted that there was no single reason given for striking any of these jurors and none of the challenge jurors were struck based on sophistication. The other reasons offered by the prosecutor at the Batson hearing were independently sufficient outside of the sophistication reason to justify the strike under Batson. And so I think that it does require going to the full comparator analysis taking into account the relevant differences as the trial court and the ACA did. Mr. Han says in part that the ACA seems to have shifted some of the trial court's stated reasons for the strikes. Can you respond to that? If you're talking about the disparity between the, I guess the criminal convictions and the responses in the questionnaire, I think that the trial, I think that it is an over read of the ACA's opinion to say that it attributed to the prosecutor a reason that, you know, juror number 24 was convicted of assault in Memphis and he disclosed that in his questionnaire, which, you know, suggests truthfulness versus jurors 27 and 11 who did not. I think that in testing the credibility of whether the conviction was a genuine nonpretextual race neutral reason for the strikes in light of juror 24, that the court considered all relevant circumstances. And that was a way to test the credibility of the offered reason, not an attribution of an unstated reason to the prosecutor that he did. But that was not specifically one of the offered reasons, correct? That's correct, Your Honor. The prosecutor did not offer as to jurors 27 and 11 the failure to disclose. And I think that it was the fact that for juror number 11, it was a conviction for writing a worthless check. And so perhaps there is an inference to be made there that, you know, that is a crime of moral turpitude. That's the language that courts have used. That was not the reason stated. But he did mention that it wasn't just a conviction, that it was a conviction for cashing a worthless check. It was in Madison County. And juror number 27 had, you know, potentially one or more convictions for drug offenses also in Madison County. And the prosecutor specifically noted that as to him of particular note to me, I was in the district attorney's office at the time of each of those six charges handling exclusively drug cases. Potential charges. Certainly, Your Honor, but one of which resulted in a conviction, and that was his belief.  He doesn't say she was. See, that's part of the problem here. And I know we're dealing decades after the fact. But he doesn't say that she was convicted. Your Honor, at the Batson hearing transcript, I believe that he notes as to, yes. Doesn't he say she may have been? And I'm quoting from the Batson transcript. It's the district court document 19-43 at page 126. Quote, it appeared that she had been convicted on at least one of these counts. Right. Appeared. What does that mean? It means that the prosecutor was acting on his belief based on his review of the I'm sorry, Your Honor. Has reflected in what? What was he reviewing? Presumably his office's records. How do we know he had them? In briefing to the Alabama Supreme Court on direct appeal, the prosecution or the state's brief lays out for juror number 27, I guess the steps that it took, right? You know, we search case number X-X at this length, you know, sort of recreating the steps of, you know, here's how we determined or here's how we could determine that these cases were legitimate. There were six offenses. There were six relevant cases. But I think more importantly on Edpa review in this case, the burden is not on the prosecution or the state to prove with any particular form of evidence that, yes, in fact, these six cases did exist, that there was one or more conviction. And Mr. Sharp at no point in this proceeding on direct appeal before the district court or before this court has pointed to any evidence disproving the prosecutor's belief that there were one or more cases in Madison County involving juror number 27 for drug offenses, that those cases did not take place during the time where the prosecutor was in this office handling exclusively drug cases and that one or more of them did not result in a conviction. And so it's not the prosecution's burden at the Batson hearing, and it's not the state's burden now to affirmatively prove that those cases happened as they said. I'm sorry, wait, I need to make sure I understand that. So you're saying that the prosecutor can strike someone on a belief of a conviction, but maintain a white juror who for sure was convicted of a crime that some would arguably say is even more serious than a bad check or a drug offense, which as you're admitting, you don't know if it was simple possession or actual distribution or something more serious, but you do know you have a juror who was convicted of actually physically assaulting someone who's allowed to serve. I think the distinction there, or one of the distinctions there, your honor is the fact that that conviction took place, I believe in 2000, and it was in Memphis, whereas jurors number 27 and juror number 11 were in the prosecutor's good in Madison County. And so not only is a conviction a valid race-neutral reason for striking a  the further point of distinction is that those convictions, based on the prosecutor's belief unchallenged by Mr. Sharp, that these happened in the county where this case was happening and may have been handled by the prosecutor conducting this war dire. That's another element, another point of distinction. Okay. Let's turn to the legal aspect of the appeal. So Alabama, as I understand the decision in this case and other Alabama cases, has a rule, a principle that provides that if any reason provided by the prosecutor is race-neutral and is not pretextual, that's the end of the analysis and you don't have to look at the other reasons. Right? Do I have that rule? Right. What Martin says is that if you have a valid race-neutral reason, right? And so it might be splitting hairs between valid and non pretextual, but.  no, but valid race-neutral is only step two of Batson. Well, I think you, you get to challenge the race neutral, the facially race neutral reason at step three to determine whether or not the reason given is pretextual. I think that the valid is the distinguishing factor between the step two analysis and the step three analysis, which is akin to what this court said in Wallace, what this, that a, if that, if the, if the race neutral reason would have independently justified the strike, then at that point, there's no need to conduct the further inquiry for reason three, reason four, reason five. Right. Except that the Alabama courts don't say the independently part, right? I haven't seen any Alabama cases that say if the race, the valid race neutral reason provided an independent ground, then it doesn't matter if they were racially tainted grounds. It seems like they're saying, if you provide one race neutral reason that is not pretextual, it doesn't matter what the other reasons were. Even if there is a race based reason that is a substantial motivating factor. And if that's the way Alabama law reads, that seems to me to be in violation of Snyder, which was decided five years before the ACA opinion in this case. Well, your honor, the Martin, which is the case that the ACA relied on here. And I think the case that your honor is referring to still acknowledges, and we would submit as faithful to the requirement in Snyder, in Miller, L in Batson, that you must consider all relevant circumstances. And so the idea that. But not, but not the substantial motivating factor language. It seems to write it out of existence. In other words, let's say you have a valid race, neutral reason, reason number two, but you also have racially based reasons, three and four. The Alabama court say, as I understand their cases, that if you provide that race reason, number two is race neutral and not pretextual. It doesn't matter what three and four are, even if they're substantial motivating factors. Well, I don't think that there's anything in Martin or any other Alabama case that comes anywhere close to saying that it doesn't matter what the other reasons are, because, and I think that that's reflected in the ACA's decision here, but it did consider all relevant circumstances and something that is relevant to whether reason one, reason two, reason three is pretextual or the reasons given for four,  six down the line. And so you can't isolate out one of the reasons given by the prosecutor. I think that the hypothetical that you're maybe offering. I'm not, I'm not, I'm not, I'm trying, I hope I'm not getting this wrong and I don't think I'm making it up, but this is what the opinion in this case says, quoting other Alabama cases, quote, as long as one reason given by the prosecutor for the strike of a potential juror is sufficiently race neutral, a determination concerning any other reasons given need not be made. End of quote. I mean, I'm not like I didn't make that up out of a whole cloth. That's what they seem to be saying. If you find one race neutral reason, that's the end of the analysis. Even if there's a substantial motivating factor with regards to one of the other racially tainted strikes. I think it's that language sufficiently that distinguishes it from, for example, a reading where it collapses the step two and the step three inquiry, right? Where if you have a race neutral reason at step two, that sort of is a stand in for overcoming any sort of inference of pretext for racial discrimination at step three. And to the extent that that is a fair reading of Martin, I think that in this case, you can look to what the ACA did, which was take into account all relevant circumstances for each of these challenge strikes and the depth of the analysis for each of these jurors differed depending on what the reasons were, the number of the reasons. And I guess the, you know, the extent whether and the extent to which you could infer pretext based on those reasons. And so I think that a good example of this, the court's discussion of jurors number 27 and 11 was extensive. It discussed every reason offered by the prosecutor, every point of analysis offered by the trial court. It compared other jurors who Mr. Sharp claimed were valid comparators. It responded to the dissent. It took into account a wider universe of relevant facts than it did, for example, believe juror number 74 or any of the other jurors who expressed, you know, varying degrees of opposition to the death penalty. And so I think that what the ACA did in this case, I think speaks to the fact that Martin is not saying that you can collapse the step two and the step three inquiry. But even if that is a fair reading of Martin, and even if there are courts who have applied it in that way, that's not what the ACA did here. What the ACA did here is take into account those facts that Batson says that it must. It relied on the fair credibility and demeanor determinations made by the trial court, not only as to the jurors based on its recollection of Ward Dyer, the prosecutor based on its recollection of Ward Dyer, but also the implicit credibility determinations that it made as to this prosecutor at the Batson hearing. And so what the ACA did, regardless of what Martin says it may or may not have done, was entirely consistent with Batson, and that is the subject of this Court's review at D-1 for purposes of AEDPA. Nothing that the ACA did in this case was inconsistent with Batson. It was not an unreasonable application of Snyder or Miller et al., and it was an entirely faithful application of those cases. It reached the right conclusion for the right reasons, taking into account either explicitly or implicitly all of the facts that Batson says that it must. Are you aware of any other courts in the country, federal or state, which have used or are applying the standard adopted by the Alabama courts in cases like Martin and Sharpe? I think that, you know, again, on our reading of Martin, it is entirely consistent with this Court's decision in Wallace. I know that. My question is a more targeted one. Are you aware of any other courts in the country, state or federal, which are using the Alabama standard as phrased? I do not know off the top of my head, Your Honor. There are similarities between Martin and a 1993 case out of the Second Circuit that I do not have in front of me, and I apologize, but I do not know one way or the other whether that language that you have presented for Martin has been adopted by any other court. All right. No, go ahead, please. I want to ask you this before I forget and then let you get back to your argument, but I'm going to ask you to assume that you lose on basically everything because I want to ask you the remedies question and get your thoughts on it too. So assuming that contrary to what you've argued in the briefs and here at oral argument, you lose on the merits, whether with or without epidefference, in the state's view, what is the appropriate remedy? What equitable shape does the writ take? We think that if it's a question of equity, and this court has equitable jurisdiction to craft the remedy, as you have indicated, the fact of the matter is that there was not a single hint, a whisper of a Batson violation from anyone at any point until nearly four years later when Mr. Sharp presented his cert petition to the Alabama Supreme Court on direct appeal. He didn't raise it at trial. He didn't raise it in front of the ACA on direct appeal. And while he did have different counsel at trial and in front of the ACA and his direct appeal, he presented an appellate brief with five issues, more than 20 pages of argument that made no mention of Batson in any way, shape, form, or fashion. The first time that he raised this issue, and I think that Mr. Sharp's counsel used the term windfall, and I think that that's an appropriate answer to this question, that through no fault of the prosecutor or the court, there were four years between the voir dire and this jury being struck and the exercise of these peremptory challenges and the point at which they have to recreate from memory in a scattered sort of paper record what they were thinking, what these jurors' demeanor was. I mean, this court, the Supreme Court have recognized consistently that so many of these peremptory strikes, valid ones are based on sort of gut feelings and sort of subtle differences in demeanor, tone, all of these things that are fresh in the prosecutor and the court's mind when you have voir dire in the morning and a Batson challenge in the afternoon, but that you'll struggle to recreate. You'll struggle to explain four years after the fact, and it appears, and I think this is in the concurring opinion in Sharp 5, that this appears to have been a strategic decision by Mr. Sharp's counsel to wait until his cert petition in the Alabama Supreme Court to raise this issue, and so he should not get a windfall for creating the exact circumstances, the lapse in memory, the potential sort of recall defects that you would expect in a case like this, based on a strategic decision to evade review in the first instance in either the trial court or the Alabama Court of Criminal Appeals, and so I think that that weighs heavily in the equitable remedy analysis that this court would undertake if we were to lose Jenovo,  or otherwise. Right, but what does that mean in practical terms? That he should not, he's not entitled to any relief because he created the exact situations. Okay. But that's like a waiver preclusion, some type of argument. It doesn't go to the merits, assuming that indeed the state of Alabama or the DA acted in a racially motivated way. Right, so you've got, you gave me a fair answer to the question I asked you, but now let me tweak it a little bit because what I want to know is if a writ is granted, what shape does it take? So now assume that that argument that you just forcefully made is also rejected, and a writ of some kind is going to be issued. And so the question is, assuming all of that and not waiving anything you've said, what does the writ say? A writ of habeas corpus is granted, conditioned on blank, fill in the blank. I think at most, a remand to the district court for further factual development in light of the delay between the voir dire and the exercise of the peremptory strikes and the bats in hearing. Okay. Taking that into account, asking the district court to evaluate any of these record deficiencies. And deficiencies might not be the right word, but the fact that what the prosecutor says at the bats in hearing is so that on any basis on which the court can evaluate step three, that any, I guess, any further analysis, any further factual development should be viewed through that lens as a relevant circumstance that the district court should consider in deciding whether Mr. Sharp is ultimately entitled to further release. And your opposing counsel has said in that circumstance, they should be entitled to the prosecutor's notes. What's your response to that? We should direct that they're entitled to review those notes that they didn't receive in discovery. I think that that would be, I think, I mean, that would be a question for E1. I think that if, if we're taking into account all relevant circumstances, I don't, I don't think that that is, is objectionable. I mean, I think that the prosecutor's notes would, I don't have a good answer as to why they wouldn't be entitled to it. Your honor. No. Okay. I have a question about the religious based exceptions. I think looking at the record, some could argue that the jury pool was filled with individuals with religious affiliations. And so the DA gets rid of some of the seventh day Adventists because of concerns about Saturday availability, and then gets rid of some of the Sunday church adherence because of their ministerial work. And, and asking this question about the real basis for that kind of strike. I'm thinking specifically about juror 52 as compared to juror 79. And with juror 52, not only the religious affiliation, but also the fact that her brother, I believe had been murdered, which some,  might argue would favor the state in terms of, you know, prosecution friendly. So can you explain to me how the religious based exception operates, especially given concerns about not discriminating against people because of their religious beliefs? I think first, generally your honor, that it was the basis for the strike was not based on the religious affiliation. And that, you know, sort of doctrinal adherence as a seventh day Adventist would cause a particular juror to vote in a particular way. It was based on the scheduling conflict, right. And, and sort of the rigid and inflexible nature of their statement that, you know, I will, you know, I will not work on Saturday. Saturday is the Sabbath and the scheduling conflict that that would create. And I think as to the second part of your question, the comparator question, and I just want to make sure I'm comparing the right to, could you tell me which two you specifically had in mind? 52 and 79 and 52, who I believe said that she was studying to become a minister, was involved or exposed to religious ministry activities. And then you've got juror 79, a white juror who was involved in ministry related activities, who was not struck. I mean, I think that the most obvious point of distinction between those two is,  the scheduling conflict created by the treatment of Saturday as the Sabbath, but also juror 52, her prior experience as a family member of somebody who was a victim of a  you know, so much so that she initiated an in chambers discussion with the court and counsel to reveal that fact, to tell them about her own experience as the victim of crime. And so I think that that's something that was not evident with juror number 79. So, but okay. So then again, the DA does have some latitude,  whatever you want to call it, but some would argue that that would be a basis for the defense to strike that juror. But what is the basis for, for the DA to say that someone who's been a, who's had a family member who was a victim of crime, it's not suitable to serve on a jury from the States or the DA's  but another person who has had that connection or experience is, well, I think that, you know, first and foremost, your honor, this court, and certainly Alabama court cited by the ACA have recognized that a potential jurors personal experience as a victim of a crime and their family members experience as a victim of a crime is a valid race base or race neutral reason for striking a juror. And I think that to the extent that the court is looking for justification sort of beyond, I guess that it's that it suggests potentially that a juror might be making decisions based on personal emotion, personal experience, their own experience with the criminal justice system, as opposed to the evidence and the facts put before them in that particular case. So when you share with us what happened in chambers, then is there evidence that the person then said, therefore I do not feel that I could serve on the jury, or is it true that you could have someone who revealed this history, but who could still serve on the jury? I think certainly you could have somebody who, or that you would not need the further explanation of. And for that reason, I believe that I could not serve on this jury that on these facts, the comparison between juror 52, juror 79 and any of the other jurors, potential jurors who had their own experience or a family member's experiences, the victim's crimes is a valid basis on its own for striking them a valid race neutral basis that satisfies step two and step three of Batson. Snyder v. Louisiana tells us that we don't need to go through all of the jurors that are being, that the DA challenged and that the defendant has highlighted that we can just find one problematic strike is enough to find in favor of Mr. Sharp. Do you disagree with that?  your honor. Okay. Thank you. Thank you very much.  I'd like to address a couple of points unless the court wants to hit me with some questions to start off. But the first point would be that my friend said that the court of criminal appeals or ACA, I guess I should call it ACA addressed every reason given for jurors, 27 and 11. And that's simply not true. If you look at footnote 12, the ACA's decision, you'll see that they say, quote sharp also challenges the other reasons offered by the state for its strikes of jurors, number 27 and 11 in light of our holding that those jurors prior undisclosed convictions provided a legitimate race neutral reason for the state to strike them. We need not address sharps arguments regarding the other reasons the state gave for striking jurors, numbers 27 and 11. And then they cite Martin comma Supra. But then didn't it go on to discuss some of those other reasons? It did your honor. And it's a, it's not a, so then, you know, as to your opposing counsel's point, I guess address his argument that he, a either Martin should be read not to exclude the court's consideration of other circumstances and that what the ACCA did here shows that, or regardless of whether Martin should be read that way, the ACCA did actually consider the other, the other issues that were raised. I think that if you look at the dissent in the second remand, you'll see that the author judge Callum, the author of Martin says they're misreading Martin and they're applying Martin incorrectly defending his work. And if you, but if, but if you look at what they're actually doing in this case, they, whatever you want to call it, the Martin rule or the Martin rule with the sharp corollary, they very clearly say that unless he can disprove every reason that the state gave, he doesn't get to succeed on a Batson claim. I mean, they began their analysis with that, that very statement sharp is not demonstrated as to any individual juror in question, that all the stated reasons and they italicized all for striking that juror were a sham or pretext. Thus sharp has not demonstrated the prosecution violated Batson. I don't think that that can be reconciled with Batson and Snyder and Miller L2. It's simply an unreasonable application. They acknowledge the existence of the cases. They pay a little bit of lip service to it, but when the rubber hits the road, they simply say too bad. You couldn't disprove all the reasons that they gave, which just can't be reconciled. That would lead to what we heard in Miller L, which is that would render it nothing. If any facially race, neutral reason suffice, it would render Batson nothing more than Swain. And Swain was an unworkable standard, ironically out of Alabama that came out of the 1960s. And it was an attempt by the court to enforce the 14th amendment. And that attempt failed. And the next best approach was taken in 1986 with Batson. So we would assert that there's simply no way to read this decision in a way that does not do violence to Batson and its progeny. Now, as far as juror 52, which Judge Abudu noted, first of all, juror 79 was an actual minister. Now the trial court didn't directly address the, we weren't looking for minister type people. I believe the exact statement the prosecutor made before the trial court was studying to become a minister, dot, dot,  which was not the kind of juror we were looking for, but then kept a white minister, an actual minister on. As far as the Sabbath keeper goes, what we have from the trial court is the court finds this to be race neutral. The prosecutor said,  first thing we noted was this juror's religious denomination was that of a Sabbath keeper. Now we don't have any evidence in the record as to what a Sabbath keeper is with regard to this. And we point out in our briefing that various religions consider different days to be the Sabbath. However, I will note that the CCA at page 370 of their decision did not, did not discuss specifically with regard to juror 52, but noted that quote, only juror number 39 actually end quote said,  his religious beliefs would prohibit him from serving as a juror on Saturday. We didn't get a question of juror 52. Hey, you said you're a Sabbath keeper. What does that mean? Does that mean you couldn't, that the Sabbath for you is Saturday? Does that mean you would absolutely not be able to, or is it a render on the Caesar situation where we've got a situation where you submit to civil authority because of that? Are you a absolutely 100% follow every tenant of the religion Sabbath keeper, or are you a cradle Catholic who may occasionally eat beef on Friday? I mean, and, and you don't know because religion is a spectrum and a person's belief system is on a spectrum and each person is an individual. And what ends up happening here when you treat someone based on what you is their belief system without asking them a single question when it's your most important point, you know, first thing we noted Sabbath keeper. So again, we've got a finding by the CCA that the only juror out of the three who said there were two seventh day Adventists and one quote unquote Sabbath keeper. And only one of them said, I can't serve on a Saturday. The others weren't even asked, but that became a primary reason. As far as juror 52 goes, the unsophisticated was found not supported by the trial court. Studying to become a minister was not directly addressed, but then was rejected. That left us with the crime victim situation. I will note that this was another shift that occurred by the courts. And so what ended up happening was the trial court. So here's what the state said. Also noted in questions 22 and 23, that this juror was actually a witness to a murder and that her brother was in fact murdered. And he had been convicted several times of varying offenses before he was  It was just our feeling. This juror was a little too connected to the process in the role of a witness or in the role of a family member having to do with murder. Nowhere in there, does it say victim or anything and nowhere does it say anything about attempted or I'm sorry, almost rape. So then you get to the trial court's decision, said the fact that a juror or a juror's family member was the victim of a crime as a sufficient race neutral reason. Sure it is. And then doesn't mention jurors five or 59. Juror five and his wife have been the victims of armed robbery. So we have a victim and somebody who witnessed their spouse getting robbed and juror 59 was a domestic violence victim who was actively engaged in court proceedings against the perpetrator of that domestic violence. At the time, jury selection was undergoing, but then we have the court of criminal appeals do a little shift here. Although the state explained because they only addressed the minister issue. Although the state explained juror number 52 was studying to become a minister. It also stated the juror number 52 his brother had been murdered and juror number 52 had witnessed the murder. The trial court found juror number 52 privately revealed she had been the victim of an almost rape, that she had a brother who had criminal history and she had witnessed a  Prosecutor never said anything about almost rape and nobody, no court ever addressed the point that, that defense council made, which was there are comparator jurors here. They didn't even talk about it. So, and this is the, this is the entirety of the analysis. After talking about that, they, they combined 52, 39 and 65 at the CCA and they said the trial court, which was in the best position to judge the demeanor of the veneer members made specific findings regarding these jurors. The materials before us do not demonstrate the trial court determination was clearly running. That's the analysis. We believe that Mr. Sharp has established D1 and D2. No deference is due. This court should grant the writ and should remand with appropriate relief, which might be more appropriately remanded the district court for DeNovo review. Thank you. Thank you both very much. It's been very helpful. We look forward to getting your submissions in a couple of weeks. Thank you. Thank you. All right. Is there a word limit on, I can't remember if there's a word limit on supplemental briefing or. There normally is, but there isn't one for this. I don't think you guys are going to write a hundred pages. No. Use your judgment. All right. Thank you. Bye.    Have a good night.  Bye bye.    Thank you.